UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROCKY D. BERRY | CIVIL ACTION NO. 11-1611 |
| -vs- | JUDGE DRELL |
| TOYOTA MOTOR SALES, U.S.A., INC. | MAGISTRATE JUDGE KIRK |

### RULING

Before the Court is the "Motion for Summary Judgment" (Doc. 32) filed by Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS"). All responses have been submitted, and the matter is ready for disposition. For the following reasons, the motion will be **DENIED**.

### I. Background

In this action, which was removed from the Tenth Judicial District Court, Natchitoches Parish, Louisiana, Rocky Berry claims he was injured in a single vehicle accident that occurred on July 16, 2010 at approximately 11:35 p.m. (Doc. 1 and Deposition of Rocky Berry, Doc. 35-2 at 13, 28, 37–41). Plaintiff was driving his mother's 1997 Toyota Corolla eastbound on U.S. Highway 84, and his two grandchildren were in the back seat. (Id. at 6–7, 14, 17). A witness, Mr. Timothy Carpenter, said Mr. Berry was swerving on the highway before the accident, which prompted Mr. Carpenter to call 911 and report the erratic driving. (Excerpts from Deposition of Timothy Carpenter, Doc. 32-3 at 10–12). Plaintiff's proposed expert, Dr. Richard Gibbs, is a professor of physics at Louisiana Delta

Technical and Community College. (Resume of Dr. Richard Gibbs, Doc. 35-4 at 1). According to Dr. Gibbs, upon encountering a strong left curve in the road, Plaintiff's vehicle continued straight, exited the roadway on the right side, hit a concrete culvert, and came to rest in a ditch. (Report of Dr. Richard Gibbs, Doc. 35-7; Affidavit of Dr. Richard Gibbs, Doc. 35-5; see also Excerpts from Deposition of Trooper Robert Owens, Doc. 32-7 at 4). Mr. Berry's recollection of the incident was that he was driving 60–61 miles per hour, and his grandson was talking to him from the back seat. (Deposition of Rocky Berry, Doc. 35-2 at 18–20, 26–27). Mr. Berry claims he slowed the vehicle out of habit and looked straight ahead while he was talking to his grandson. The next thing Plaintiff remembers is that the vehicle was in a ditch. (Id. at 19–21, 26–27). Mr. Carpenter did not witness the mechanics of the accident, but he did see the vehicle after it came to rest. (Excerpts from Deposition of Timothy Carpenter, Doc. 32-2 at 13). Mr. Berry allegedly suffered injuries to his neck, back, jaw, face, and chest. (Petition, Doc. 1-1 at 1; Deposition of Rocky Berry, Doc. 35-2 at 37–41; see also Medical Records, Doc. 35-12).

Plaintiff asserts the vehicle was defective, because the driver's side air bag failed to deploy, and this failure contributed to his injuries. (Petition, Doc. 1-1 at 2; First Amended Complaint, Doc. 25 at 1–2). While the angle of impact is disputed by the parties, Plaintiff contends that regardless of whether the car hit the concrete culvert straight on or through a "glancing blow," the vehicle "would

2

have experienced a change in velocity sufficient to trigger the deployment of the air bag." (Affidavit of Dr. Richard Gibbs, Doc. 35-5 at 2; <u>see also</u> Report of Dr. Richard Gibbs, Doc. 35-7).

According to Mr. Berry, his mother purchased the vehicle in used condition in 2007. (Deposition of Rocky Berry, Doc. 35-2 at 6–7). To Plaintiff's knowledge, his mother had no problems with the car, she had not taken it to a mechanic prior to the accident, and the air bag system was in good working order. (<u>Id.</u> at 9–10). Plaintiff understood the vehicle had an indicator light, which would illuminate and shine for approximately five seconds after the car was started if the air bag system was functioning properly. (<u>Id.</u> at 9). If the light remained illuminated for more than five seconds, the vehicle was to be inspected by a mechanic immediately, because the air bag system might not be operational. (<u>Id.</u> at 9–10). Plaintiff argues he had never personally seen the light stay on in his mother's Corolla, and he had no knowledge of any such incident involving any other driver of the vehicle. (<u>Id.</u>).

## II. <u>Law & Analysis</u>

### A. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011)(internal quotations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### B. Louisiana Products Liability Act ("LPLA")

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52; see also Evans v. Ford Motor Co., 484 F.3d 329, 334–35 (5th Cir. 2007). The applicable standard is as follows:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product *unreasonably dangerous* when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

La. R.S. 9:2800.54 (italics added).

Liability may be imposed if a product is "unreasonably dangerous:" (1) in design; (2) secondary to an inadequate warning; (3) because the product does not conform to an express warranty; or (4) in construction or composition. Id. Regarding the three initial categories, we first note that, as discussed and agreed upon by counsel during the July 18, 2013 pretrial conference, Plaintiff's claim the vehicle was defectively designed has been abandoned and was dismissed. (Minutes of Pretrial Conference, Doc. 40 at 1). Second, although the original petition

4

contained an allegation the vehicle was unreasonably dangerous based on a lack of adequate warnings, Plaintiff voluntarily amended his suit to remove this claim. (First Amended Complaint, Doc. 25 at 1–2). Finally, Plaintiff does not appear to allege the product failed to conform to an express warranty. However, in an abundance of caution, the Court notes there is no support in the record for this claim, and it is not considered as having been implied.

Thus, Plaintiff's only remaining theory under the LPLA is that the vehicle was unreasonably dangerous in construction or composition. A product is "unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. 9:2800.55.

Looking at the evidence in the light most favorable to the nonmoving party, the circumstances surrounding the accident are unclear from the record. Whether the air bag should have deployed is a genuine dispute of material fact. The user's manual for the vehicle states: "[t]he SRS airbags will deploy if the severity of the impact is above the designed threshold level, comparable to an approximate 20km/h (14 mph) collision when impacting straight into a fixed barrier that does not move or deform." (1997 Toyota Owner's Manual, Doc. 35-6 at 3). Here, there is conflicting evidence regarding whether the car hit the concrete culvert straight

5

on or at an angle and how that would affect deployment of the air bags. Additionally, the exact speed of the vehicle at the moment of impact and its consequential rate of deceleration are also disputed. While Mr. Berry declared he was driving slower than 60–61 miles per hour, the investigating officer, Trooper Owens, reported a speed of 73 miles per hour when the vehicle exited the road. (Deposition of Rocky Berry, Doc. 35-2 at 26–27; Deposition of Trooper Owens, Doc. 35-9 at 15). Plaintiff's proposed expert, Dr. Gibbs, opines the air bag should have deployed under either of these scenarios. He also found the air bag should have deployed if the car was traveling at the speed he estimated based on the crush caused by the impact. (Report of Dr. Richard Gibbs, Doc. 35-7). Defendant's proposed expert, Gerald Corwin, however, is of the opinion the vehicle was going slower and did not meet the threshold needed to trigger air bag deployment. (Report of Gerald Corwin, Doc. 35-8 at 3–5). Mr. Corwin also disagrees with Dr. Gibbs' speed calculation based on the crush of the vehicle. (Id. at 4).

Whether Plaintiff's damages were proximately caused by the alleged defect is an additional genuine dispute of material fact. Plaintiff's initial attending physician opined that "Mr. Berry's jaw injuries were probably suffered due in part to the failure of the air bag to deploy." (Affidavit of Dr. Julio Enrique Iglesias, Doc. 35-11 at 1–2). Plaintiff also claims Dr. Katz told him the air bag's failure to deploy contributed to his back injury. (Deposition of Rocky Berry, Doc. 35-2 at 40–41). Defendant takes the position Mr. Berry's injuries were proximately caused by the

fact he was not wearing a seat belt at the time of the accident. (Report of Gerald Corwin, Doc. 35-8 at 4–5). However, in his deposition, Plaintiff claims he *was* wearing his seat belt. (Deposition of Rocky Berry, Doc. 35-2 at 18–19).

These disputes of material fact make granting summary judgment inappropriate. We will not usurp the jury's function when there are such genuine issues to be resolved.

### III. Conclusion

Thus, for the reasons detailed above, Defendant's Motion for Summary Judgment (Doc. 32) will be **DENIED**, and Plaintiff's construction or composition claim under the LPLA will proceed to trial.

SIGNED on this __31st__ day of March, 2014 at Alexandria, Louisiana.

Dee D. Drell, Chief Judge
United States District Court

7